CLARK B. HALE *vs.* JOHN A. WILSON.

One who has been induced by the fraud of another to sign partnership articles with him, and to advance to him money as a portion of the capital stock of the partnership, can maintain an action at law to recover back the money advanced, if it was obtained from him not for partnership purposes, but with the intent on the part of the receiver to appro-priate it to his own use.

CONTRACT to recover $300, money had and received by the defendant to the plaintiff's use. The answer alleged in substance that the plaintiff and the defendant were partners in the business of selling the "Advance mop wringers" and that the $300 sued for was advanced by the plaintiff as his share of the capital of the partnership to be used in the purchase of such wringers.

At the trial in the Superior Court, before *Allen*, J., the plain-tiff testified that he first met the defendant at a hotel, in answer to an advertisement; that the defendant produced a mop wringer, and said he had made twenty-five hundred dollars out of it the previous year; that he had a patent on it; that he needed help to do the business; that he thought if the plaintiff and he should go into partnership they could make money; that six hundred dol-lars capital would be enough; that he knew where he could get the wringer made; that he, the plaintiff, met him again a day or two after, at the plaintiff's brother's store, when the wringer was again exhibited, and its operation shown; that at this interview the defendant produced a written agreement of copartnership, which was read over in the presence of the plaintiff and his brother, and which the plaintiff and the defendant then both signed in duplicate; that they then hired a room of the plain-tiff's brother for an office, where the plaintiff was to receive the wringers as they should be sent to him, and pack them and send them away to fill such orders as the defendant should forward to

him ; that after the agreement of copartnership (which was put in evidence) was signed he paid to the defendant three hundred dollars as his part of the capital of the firm ; that the defendant put an equal sum with it ; that the defendant said he would go away on the next train to Lawrence and pay for the wringers with the money ; that the plaintiff might look for the wringers in a week ; that the plaintiff did not receive any wringers, or any orders for wringers, and did not afterwards see the defendant till the defendant was brought to Springfield under arrest; that afterwards he was informed by the defendant that he had spent the money in procuring patent rights, and in driving around the country. The plaintiff further testified that certain letters put in evidence, in which the defendant made excuses for not having sent the plaintiff any wringers, were written to him by the defendant before the defendant's arrest.

Frank B. Hale, brother of the plaintiff, testified that the parties came into his store and brought a wringer with them and tried it ; that the plaintiff said he had arranged to go into partnership with the defendant ; that the witness said the wringer looked as if it might do the work ; that the defendant said he would like to have the wringers come along as soon as possible ; that the defendant said he wanted the money at once, that the goods were in process of manufacture, and that they would not ship them till the money was received ; that the agreement of copartnership was signed ; that they hired rooms of the witness for an office ; that they went out and got some books for keeping the accounts of the firm, and then the plaintiff gave the defendant three hundred dollars as his share of the capital ; that the defendant exhibited the same amount of money ; that the witness opened the books of the copartnership, crediting each member of the firm, the plaintiff and the defendant, with the sum of three hundred dollars, and that the copartnership continued to hire the room of the witness for three months or more, at a rent of $12 per month, which had not been paid.

The plaintiff put into the case the deposition of F. B. Wilson, from which it appeared that the defendant had contracted with the firm of Williams & Wilson, of which the deponent was a

member, for the manufacture of mop wringers for him by the firm, but that none had been made by them.

An attorney at law, a witness for the defendant, testified that the defendant employed the firm of which he was a member to urge upon the firm of Williams & Wilson, referred to in the deposition, the fulfilment of their contract; that the witness had frequent interviews with Williams & Wilson, and received indifferent replies, indicating a probability that they would fulfil the contract, but that in November they informed the witness that they would not do so, and would suffer the consequences; whereupon the witness, by instruction of the defendant, made a settlement with them, by which they paid the defendant $500 damages for their failure to perform their agreement to manufacture mop wringers for him.

On the foregoing evidence, the defendant asked the court to rule: " 1. That, on the evidence, no action at law can be maintained against the defendant. 2. That, on the evidence, the plaintiff can neither maintain the action in this form, nor on the pleadings in this case.

" And, if the court declines so to rule, 3. That the action cannot be maintained except the jury are satisfied that the plaintiff was induced to execute the copartnership agreement by false representations on the part of the defendant as to matters material to the agreement, such as the existence of a patent, as to the amount which had been made out of it previously, or as to there being arrangements existing for the manufacture of the wringers. And that the burden of proof is on the plaintiff to show that the representations made by the defendant were false, and were known by the defendant to be false, and that plaintiff would not have executed the copartnership agreement but for his belief that the false representations of defendant were true. That the jury may not find a verdict for the plaintiff on suspicion that the defendant made some statements which may not have been true; but, in order to find such verdict, must be satisfied, as reasonable men, by the evidence in the case. That the presumption is in favor of the defendant that he acted honestly, and the plaintiff is not entitled to a verdict unless he proves fraud, as

already described, and that he was deceived. That in determining the question, the jury are not to take into consideration any promises of the defendant as to his future action in disposing of the capital of the copartnership. That if the parties entered into a copartnership agreement, and the plaintiff fails to show that he was induced to enter into that agreement by reason of his belief in the truth of false representations fraudulently made by the defendant, then the copartnership was a real and existing copartnership, and the rights of the parties are to be determined by the law which governs the relations of copartners, and the plaintiff cannot maintain this action, but must have recourse to a court of equity to settle the affairs of the firm, and can find in such equity court full protection of his rights, and the defendant can be compelled in such equity court to account fully for all partnership property which may have come to his hands."

The court declined to make the first and second rulings asked for, and declined to adopt the third ruling as asked for, and instructed the jury substantially as follows :

" There is no question that defendant received three hundred dollars, nor, that it was paid by the plaintiff to the defendant under the contract of copartnership, as the plaintiff's share of the copartnership funds, and professedly received by the defendant as copartnership funds. If this apparent transaction was the real one — if the money was not only professedly, but really, received by the defendant as partnership funds, with intent on his part to use it as partnership funds, this action cannot be maintained. The plaintiff bases his action on the proposition that the money was not received by the defendant for copartnership purposes, and this is the question on which the case will turn. If the defendant, the money being paid with the understanding that it was received as copartnership funds, received it for this purpose, this action cannot be maintained ; but if defendant received it intending to appropriate it to his own use, the plaintiff can maintain the action. The plaintiff claims that when the defendant received it he intended to appropriate the money to his own use, that the copartnership was a lure and a sham, that the representations of the defendant were false ; that his subsequent conduct

was evidence of his intention to appropriate the money to his own use, and not to carry out the copartnership agreement, and that the money was obtained by false representations. The defendant says he had an interest in a patent, and a real intent to do the business of the copartnership. The matter is to be determined by you on all the evidence, written and oral. The purpose with which the defendant received the money is for you to determine. It appearing that the money was paid and received under an agreement of copartnership, and that the defendant knew it was paid for that purpose, if it was received and was held by him as copartnership assets, this action cannot be maintained; but if the purpose of the defendant in receiving the money was not to apply it to partnership purposes, but to apply it to his own purposes, the action can be maintained; and the burden of proof is upon the plaintiff."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*A. L. Soule,* for the defendant. The money sued for, having been paid by the plaintiff to his partner, the defendant, as partnership property, and having been entered to the plaintiff's credit in the books of the copartnership, with the knowledge and consent of both parties, and the copartnership, with the knowledge and consent of both partners, having incurred liabilities and expenses for various matters, some of which are still unsettled, and no settlement of copartnership accounts having been made between the partners, this action cannot be maintained. The plaintiff must resort to a court of equity for the winding up of the partnership affairs. *Williams* v. *Henshaw,* 12 Pick. 378. *Murray* v. *McHugh,* 9 Cush. 158. Chitty on Contracts, (11th Am. ed.) 339. Parsons on Contracts, 163. The plaintiff could as well maintain an action at law against his partner for any partnership money received from any third person, as for this. *Smith* v. *Barrow,* 2 T. R. 476.

If it be said that the question whether the partnership really existed was in issue, it is submitted that the court in its instruction assumes the existence of the copartnership, and places the **right** to recover on the concealed purpose of the defendant as to

the disposal of moneys paid to him under the copartnership arti cles, for copartnership purposes. If it was intended to contro vert the proposition that a copartnership really existed, the jury should have been instructed in accordance with the request of the defendant, numbered 3 in the bill of exceptions, because the plaintiff could avoid his agreement, and divest himself of his duties and liabilities to the defendant as a partner, only by show ing that he had been led to make the agreement of copartnership by fraudulent and false representations on the part of the defend ant amounting to deceit.

*G. Wells,* for the plaintiff.

MORTON, J. We are of opinion that the defendant has no ground to complain of the instructions given at the trial. Under them the jury must have found that the defendant, by false rep resentations, induced the plaintiff to enter into an agreement for a copartnership and to pay him three hundred dollars as a part of the capital stock of the pretended firm, and that the defendant obtained this money, not for the purpose of establishing a co partnership, but for the purpose and with the intent of appro priating it to his own use and defrauding the plaintiff. Upon these facts the plaintiff can maintain an action at law to recover back the money fraudulently obtained from him.

The doctrine relied upon by the defendant, that one partner cannot, generally, sue the other at law to recover money paid into the firm, does not apply to the case. The gist of the plain tiff's case is that there was no real partnership formed ; that the agreement to form a partnership was a pretence used by the de fendant to defraud the plaintiff of his money, and that the money was not used or intended to be used for partnership purposes. This was the issue upon which the plaintiff rested his case ; there was evidence which tended to prove these facts, and, the jury having found them in favor of the plaintiff, he is entitled to a judgment. The instructions given were applicable to the evi dence and sufficient. *Exceptions overruled.*